IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



OCT 0 5 2018

Clerk, U.S District Court
District Of Montana
Missoula

| UNITED STATES OF AMERICA, | Cause No. CR 13-34-M-DWM |
| --- | --- |
| Plaintiff/Respondent, | CV 18-95-M-DWM |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| JONATHAN LEE OLIVER, | |
| Defendant/Movant. | |

Defendant Jonathan Lee Oliver moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Oliver is a federal prisoner proceeding pro se.

I. Preliminary Review

Before the United States is required to respond to the motion, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an

1

unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On August 29, 2013, a grand jury indicted Oliver on 96 counts of wire fraud, violations of 18 U.S.C. § 1343 (Counts 1–96); seven counts of money laundering in violation of 18 U.S.C. § 1957 (Counts 97–103); one count of aggravated identity theft, a violation of 18 U.S.C. § 1028A(a)(1) (Count 104); and 17 counts of structuring a transaction to avoid financial institutions' reporting requirements, violations of 31 U.S.C. § 5324(a)(1) (Counts 105–121).

The Indictment alleged Oliver fraudulently obtained money from various customers (Counts 1–96) by promising to construct steel buildings for them and then failing to follow through. With the buildings only partially completed, Oliver began using his customers' money for his personal benefit, including the purchase of vehicles, a motor coach, jet-skis, an engagement ring, and a house (Counts 97–103). He opened businesses and applied for worker's compensation benefits using another person's identity (Count 104), and, on 17 occasions, he withdrew cash from a Wells Fargo account in sums between $9,950 and $9,975, just under the threshold that would trigger a special reporting requirement for the bank under 31 U.S.C. §§ 5313(a) and 5323.

On February 6, 2014, the parties filed a fully executed plea agreement. Oliver agreed to plead guilty to one count of wire fraud (Count 1), one count of money laundering (Count 97), and one count of structuring (Count 105). The United States agreed to dismiss Counts 2–96, 98–104, and 106–121. *See* Plea Agreement (Doc. 21) at 2–3 ¶ 2 paras. 1, 3. The agreement provided:

> The defendant understands that restitution to the victims of the crimes charged in the Indictment is mandatory, 18 U.S.C. §§ 3663A(a)(1), (c)(3), and he agrees to be responsible for complete restitution, notwithstanding the government's agreement to move to dismiss certain counts.

*Id.* at 3 ¶ 2 para. 2. The United States also conditionally agreed to move for a three-level reduction in the advisory guideline calculation for acceptance of responsibility. *See id.* at 9 ¶ 6. The parties reached no other agreement about the guideline calculation.

On February 25, 2014, Oliver pled guilty in open court. *See* Minutes (Doc. 25). He also admitted all three forfeiture counts. *See* Minutes (Doc. 25); Change of Plea Tr. (Doc. 54) at 45:24–46:20, 50:23–51:14.

A presentence report was prepared. In the advisory guideline calculation, the base offense level was seven. *See* U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1) (Nov. 1, 2013). The amount of the loss fell between $2,500,000 and $7,000,000, resulting in an 18-level increase. A two-level enhancement was applied because there were more than ten victims. *See id.* § 2B1.1(b)(1)(J), (2)(A). The conviction

3

under 18 U.S.C. § 1957 resulted in a one-level enhancement, and Oliver received a three-level reduction for acceptance of responsibility. *See id.* §§ 2S1.1(b)(2)(A), 3E1.1. The total offense level was 25. *See* Presentence Report ¶¶ 39, 42–53. With a criminal history category of V, Oliver's advisory guideline range was 100 to 125 months. *See id.* ¶¶ 60, 93.

Sentencing was held on July 22, 2014. Oliver contested the amount of restitution owed as well as his criminal history score. *See* Presentence Report Addendum at 1–2; Def. Sentencing Mem. (Doc. 34) at 2. The Court heard testimony on the restitution issue and took the issue under advisement. *See* Sentencing Tr. (Doc. 56) at 101:25–102:2. With corrections not affecting any issue here, the Court adopted the presentence report without change. *See* Statement of Reasons (Doc. 41) at 1 § I(B)(4).

On July 22, 2014, Oliver was sentenced to serve 100 months on Counts 1 and 97 and 60 months on Count 105, concurrently,[1] to be followed by a three-year term of supervised release. *See* Minutes (Doc. 39); Am. Judgment (Doc. 51) at 2–3. On August 28, 2014, the Court entered findings and conclusions on the restitution amount. Oliver must pay $5,394,298.00 in restitution. *See* Am. Judgment at 5–6. In addition, the Court entered a final order of forfeiture in the

---

[1] These terms are concurrent with each other but consecutive to any sentence imposed in New Hampshire or Oregon.

4

amount of $6,486,186.33. *See* Final Order of Forfeiture (Doc. 53) at 2; Sentencing Tr. (Doc. 56) at 138:4–139:23.

Oliver appealed, but the appeal was dismissed as waived in the plea agreement. *See* Mem. at 2, *United States v. Oliver*, No. 14-30157 (9ht Cir. Jan. 24, 2017) (Doc. 66). Oliver petitioned for writ of *certiorari*. The Supreme Court denied review on May 30, 2017. *See Oliver v. United States*, No. 16-8941 (U.S. pet. filed Apr. 24, 2017); Clerk Letter (Doc. 73).

Oliver's conviction became final on May 30, 2017. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on May 24, 2018. *See* Mot. § 2255 (Doc. 79) at 17; 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988). On September 14, 2018, he filed a supplement to his motion. *See* Supp. (Doc. 81).

### III. Claims and Analysis

Oliver claims that counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Oliver must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

5

Oliver's allegations are reorganized here, but all are addressed.

## A. Voluntariness of the Guilty Plea

Some of Oliver's allegations go to the voluntariness of his guilty plea. He would be entitled to plead anew if his counsel's advice to plead guilty was unreasonable and if there is a reasonable probability that a reasonable, competently advised person in Oliver's position would have decided to go to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985).

### 1. Loss Amount and Terms of the Plea Agreement

Oliver claims the plea agreement "stipulates to terms not authorized by law" because the United States "had no actual authority to make the particular recom[m]endation without actual and substantial loss amounts, supported by documents." Mot. § 2255 (Doc. 79) at 6. He further contends that his attorney told him "he must blindly accept whatever loss amount was determined," while in reality "the plea agreement does not state a loss amount or even state that it is the 'loss amount' which will determine the Guideline Range." *Id.* at 6–7. He also claims the plea colloquy should have addressed his "ability to specifically challenge the loss amount or any effect such a challenge may or may [not] have on the validity of the plea agreement." *Id.* at 7.

The plea agreement stipulated to few terms. None were unauthorized. The law did not require the parties to agree on or state the upper limit of a loss amount.

6

Oliver was not informed of what the guideline calculation would be, but no defendant is. *See, e.g.*, Fed. R. Crim. P. 32(e)(1). Nor was Oliver informed he could "specifically challenge the loss amount," but the law did not require that either. A challenge to the loss amount could not affect the validity of a plea agreement that does not mention a loss amount.

The law required that Oliver be advised of "the court's obligation to calculate the applicable sentence-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)," Fed. R. Crim. P. 11(b)(1)(M), and he was, *see* Change of Plea Tr. at 26:23–30:11. He was also advised, "There's a loss amount that's going to drive what the base offense level is as far as the guidelines go, and then there's the restitution amount, and those numbers are not necessarily the same." Change of Plea Tr. (Doc. 54) at 18:25–19:3; *see also id.* at 27:13–28:10.

For the sake of argument, the Court will assume counsel told Oliver he must "blindly accept" the loss amount[2] and that Oliver did not fully understand the distinction between loss amount and restitution. Even so, Oliver knew the parties did not agree on the amount of restitution, that the Court would set the correct amount in the event of a dispute, and that he would not be able to appeal the

---

[2] Counsel, at any rate, did not "blindly accept" the loss amount. He objected to it. *See* Presentence Report Addendum at 1. Before sentencing, he withdrew the objection, but he persisted with his objection to the restitution amount.

7

decision. *See* Change of Plea Tr. at 18:13–21:18. He had a full and fair opportunity to contest the amount. *See* Sentencing Tr. (Doc. 56) at 5:16–101:21. The amount of restitution ultimately ordered, $5,394,298, *see* Findings and Conclusions (Doc. 50) at 32, falls within the same guideline range as the amount of the loss, $6,468,186.33, *see* Presentence Report ¶ 39; U.S.S.G. § 2B1.1(b)(1)(J). There is no reason to believe Oliver had a realistic prospect of persuading anyone that the loss amount was $2,500,000 or less, and that is what he had to do to obtain a lower offense level. *See* U.S.S.G. § 2B1.1(b)(1)(I). That being so, a reasonable person in Oliver's position would not have gone to trial on all 121 counts of the Indictment even if he had known, before he pled guilty and down to the penny, both the loss amount and the restitution amount.

There is no reason to suspect Oliver was misinformed about any terms of the plea agreement or that he was entitled to something more (or less) than he bargained for. Consequently, there is no reason to doubt the validity of his guilty plea. This claim is denied.

### 2. Motion to Suppress

Oliver also contends that counsel was ineffective because he failed to assert that "evidence seized and used by the government to build his criminal case was the fruit [of] an illegal search, a traffic stop in which computers and documents were illegally seized." Mot. § 2255 (Doc. 79) at 12.

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Oliver's guilty plea does not waive his opportunity to "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" defining the "wide range of reasonable professional assistance." *Id.* at 267. But the guilty plea means Oliver must show not only that the claim he abandoned by pleading guilty had merit but also that his attorney's advice to plead guilty without having litigated the claim "rendered that advice outside the range of competence demanded of attorneys in criminal cases." *Id.* at 268 (internal quotation marks omitted).

But the traffic stop occurred on December 20, 2011, weeks after state and federal law enforcement authorities began investigating Oliver's businesses. *See* Presentence Report ¶¶ 8–9. Pursuing officers resorted to stop sticks. The vehicle had to be towed and impounded and, therefore, its contents had to be inventoried. *See id.* ¶¶ 23, 58. The case against Oliver was built on multiple sources independent of the search of his van: interviews with his customers, employees, and acquaintances, *see id.* ¶¶ 9–21, 24–26, and bank and business records subject to subpoena, *see id.* at ¶¶ 27–37; Indictment (Doc. 1) at 4–10; Offer of Proof (Doc.

24) at 4–5; *see also, e.g., Murray v. United States*, 487 U.S. 533, 536–41 (1988); *Segura v. United States*, 468 U.S. 796, 805–16 (1984). There is no reason to suppose anything of significance would have been gained by filing a suppression motion.

This claim is denied.

### 3. Conclusion

Oliver's allegations do not support an inference that his guilty plea was involuntary, unknowing, or unintelligent.

### B. Sentencing Issues

Oliver makes several claims intended to show that counsel could have parried the prosecution's evidence supporting loss amount and restitution. His recurring theme is that the investigating agents, who interviewed victims and gathered and collated documentary evidence, did not know what they were doing and were misled by Oliver's victims.

Oliver claims he was "not allowed to present tangible evidence in refutation of the governments loss figures based on his attorney's failure to prepare such defense." In support of this contention, he cites his own testimony at sentencing. *See* Mot. § 2255 (Doc. 79) at 10 (citing Sentencing Tr. (Doc. 56) at 82:2–23). Responding to a question his counsel did not ask, Oliver said the prosecution "never asked" him to produce evidence in his defense. This does not show Oliver

10

was "not allowed" to present evidence in his defense. In fact, Oliver testified that he provided the United States "with receipts and other documentation to back up what I was saying." Sentencing Tr. at 68:14–22.

Oliver claims that counsel should have made an issue of the legality of the victims' attachment and seizure of his equipment. *See* Mot. § 2255 at 9. He testified at sentencing about some victims' seizure of his equipment to offset their costs. *See, e.g.*, Sentencing Tr. (Doc. 56) at 62:7–25, 97:4–20 (Balsdon), 65:5–67:1 (Thurlow), 69:20–70:9 (Supertherm). His testimony was not credible, or not relevant to the restitution statute, or both. *See* Findings and Conclusions (Doc. 50) at 5–6 (Balsdon), 18–19 (Thurlow), 29 (Supertherm); 18 U.S.C. §§ 3663A(b)(1), 3664(g)(2)(B); Findings and Conclusions (Doc. 50) at 7–11.

Oliver contends counsel "did little to bolster Petitioner's claims of services rendered" and "allowed the Government to submit and rely on unsubstantiated loss claims without objection," *id.* at 8, resulting in "a grossly inflated loss amount and a miscalculation of the application Guideline Range," *id.* at 7. In his supplement, Oliver alleges "his attorney could have rebutted the victims unsupported statements by exhibiting the actual contracts [and] receipts." Supp. (Doc. 81) at 3.

But defense counsel could not change the underlying law:

> The Court calculates restitution in this case by reference to each victim's out-of-pocket loss in the form of money paid to Oliver less the value of work and materials provided for the contracted buildings. . . . Oliver's formulation of the restitution equation by reference to

> substitute performance of the contract is without factual or legal
> support and will be set aside.

Findings and Conclusions (Doc. 50) at 9–10. The contracts were not relevant. Oliver's receipts would not prove he delivered anything valuable to the victims. His "claims of services rendered," Mot. § 2255 at 8, are no more credible now than when he testified at sentencing.

Competent defense counsel are not required to bolster rabbits out of hats. The United States explained in detail how it formulated its restitution requests. *See* Sentencing Tr. at 8:15–9:14, 32:4–34:25, 36:25–37:14. Oliver had nothing but his own say-so claiming he had receipts, contracts, settlement agreements, and photographs and had turned it all over to the United States. To believe counsel was ineffective with respect to the loss amount and restitution, the Court must believe defense counsel, the prosecutor, the case agents, and many of the victims were incompetent, dishonest, or both. Oliver has repeatedly proved himself to be dishonest. *See, e.g.*, Sentencing Tr. at 127:12–131:22, 133:12–134:21. This claim is denied.

### C. *Alleyne* Claim

Oliver's supplement adds an allegation that counsel should have claimed the loss amount is an element of every fraud offense and not just a sentencing factor. *See* Supp. (Doc. 81) at 6–7. This belated claim makes more sense of Oliver's belief that the plea agreement should have addressed the amount of the loss, but his

belief remains unfounded.

"Facts that increase the *mandatory minimum* sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 108 (2013) (emphasis added). Oliver was not subjected to a mandatory minimum sentence on Counts 1, 97, or 105. *See* 18 U.S.C. §§ 1343, 1957; 31 U.S.C. § 5324(a)(1), (d). The ruling in *Alleyne* "does not mean that any fact that influences judicial discretion must be found by a jury." *Alleyne*, 570 U.S. at 116. This claim is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Oliver's claims meets even the relatively low threshold required for a COA. His claims about what a plea agreement must or must not include are

wrong. None of his allegations support an inference that he might reasonably have decided to go to trial on 121 counts instead of pleading guilty to three. There is no reason to suppose a motion to suppress documents that were found in a vehicle, even if granted, would have made any difference in the outcome of the case. Oliver's fraud came to light weeks before the traffic stop, and the investigation involved witness testimony and bank and business records that were available from sources other than the back of the van.

At sentencing, counsel permitted Oliver to say what he wanted to say by walking him through each of the victims claiming restitution and asking him open-ended questions about the amount he believed he owed. Oliver complains counsel did not "do much" to support what he said, but he does not identify anything counsel could have done that would both support his testimony and address the applicable law.

Finally, Oliver's late-filed *Alleyne* claim lacks merit because none of the counts to which Oliver pled guilty included a mandatory minimum penalty.

Reasonable jurists would find no basis to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Oliver's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 79, 81) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Oliver files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 18-95-M-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Oliver.

DATED this 5th day of October, 2018.

Donald W. Molloy
United States District Court